S00G1287. CAMERON et al. v. LANG et al.
S00G1180. WILLIAMS v. SOLOMON et al.

(549 SE2d 341)

FLETCHER, Presiding Justice.

These appeals concern the interplay between the issues of qualified immunity and proximate cause when a law enforcement officer is sued for damages as a result of a high speed chase of a fleeing suspect. In both actions, the trial court granted summary judgment to the officers and their government employers based on the doctrines of official (qualified) immunity and sovereign (governmental) immunity. The Court of Appeals for the State of Georgia affirmed in the City of Savannah case,[1] but reversed in the Peach County case based on OCGA § 40-6-6.[2]

We granted the writ of certiorari to address whether a trial court must consider the issue of qualified immunity before the issue of causation under OCGA § 40-6-6. Because the rationale for qualified immunity is to protect the independent judgment of public employees without the potential threat of liability, we hold that a court must consider as a threshold issue whether the officer is entitled to qualified immunity from personal liability in a lawsuit for damages. Despite the seemingly inconsistent results in these cases, we nevertheless affirm both decisions of the court of appeals.

## FACTS AND PROCEEDINGS

Robert Williams sued police officer Ramsey William Solomon and the Mayor and Aldermen of the City of Savannah based on injuries he sustained when his car collided with Solomon's at an intersection. Williams alleged that the officer acted in reckless disregard for the public safety by running the stop sign and failing to use his car's siren and emergency lights. In affirming the grant of summary judgment to the defendants, the court of appeals concluded that Solomon was entitled to qualified immunity from personal liability and OCGA § 40-6-6 did not apply since it does not create a waiver of any immunity. In granting certiorari, we asked the parties to address whether the court of appeals correctly concluded that OCGA § 40-6-6 did not apply.

In the second case, Sheryl Ann Lang sued deputy sheriff Kenneth Cameron, Peach County Sheriff Johnnie V. Becham, and others for the wrongful death of her husband, Lonnie Raymond Lang. Lang was killed in a head-on collision when Thomas Tiraboschi, a fleeing felon, crossed the centerline of a two-lane road and struck Lang's car

[1] See *Williams v. Solomon*, 242 Ga. App. 807 (531 SE2d 734) (2000).
[2] See *Lang v. Becham*, 243 Ga. App. 132 (530 SE2d 746) (2000).

while being pursued by Cameron. In its decision, the court of appeals did not address whether the officer was entitled to immunity from personal liability, but instead held that the trial court erred in granting him summary judgment under OCGA § 40-6-6 because the plaintiff presented evidence that Cameron acted in reckless disregard of proper law enforcement procedures in his decision to continue the high speed pursuit of Tiraboschi. We asked whether the court of appeals should have determined if qualified immunity applies as the threshold issue before considering whether the plaintiff created a disputed issue of material fact under OCGA § 40-6-6.

## OFFICIAL (QUALIFIED) IMMUNITY

1. The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity.[3] Qualified immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption."[4] Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.[5] The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.[6] This protection is particularly important in the context of a high speed pursuit where police officers must make a split-second decision on whether to initiate the pursuit or continue it and the type of risks to take.

In a different context, the United States Supreme Court has discussed the role of qualified immunity under federal law in protecting government officials from liability.[7] The Court explained that qualified immunity is provided to permit government officials to act with independence and without the fear of consequences. These consequences "are not limited to liability for money damages; they also include 'the general costs of subjecting officials to the risks of trial — distraction of officials from their governmental duties, inhibition of

---

[3] See *Gilbert v. Richardson*, 264 Ga. 744, 750 (452 SE2d 476) (1994).

[4] *Teston v. Collins*, 217 Ga. App. 829, 830 (459 SE2d 452) (1995) (citing *Hennessy v. Webb*, 245 Ga. 329, 330-331 (264 SE2d 878) (1980)).

[5] See *Gilbert*, 264 Ga. at 753.

[6] See Restatement (Second) of Torts § 895D comment b; see also OCGA § 50-21-21 ("the proper functioning of state government requires that state officers and employees be free to act and to make decisions, in good faith, without fear of thereby exposing themselves to lawsuits and without fear of the loss of their personal assets.").

[7] See *Mitchell v. Forsyth*, 472 U.S. 511 (105 SC 2806, 86 LE2d 411) (1985).

discretionary action, and deterrence of able people from public service.' "[8] As a result, the Court concluded that qualified immunity is an "entitlement not to stand trial" rather than a "mere defense to liability."[9]

Although the Supreme Court in that case was dealing with whether a government official could appeal the district court's denial of a claim of qualified immunity as a collateral order, its decision provides persuasive reasons for resolving the issue of a government employee's qualified immunity as early as possible in the legal proceedings. Since state law also affords public officers and employees immunity from personal liability for discretionary acts in part to protect them from the risks of trial, it would not be logical, efficient, or fair to bypass the issue of qualified immunity in favor of the issue of causation. Instead, a law enforcement officer's role in contributing to a collision during a high speed chase, which usually involves questions of fact under OCGA § 40-6-6, should be evaluated only after the court has determined that the officer is not immune from personal liability, which usually is a question of law.[10]

Nothing in the language of OCGA § 40-6-6 on emergency vehicles requires a court to address the issue of causation before dealing with the defendants' immunity from liability. OCGA § 40-6-6 (d) (3) states explicitly that subsection (d) deals solely with issues of causation and duty and "shall not affect the existence or absence of immunity which shall be determined as otherwise provided by law." Because the better policy and practice is to address immunity before causation, we hold that our state courts must consider the issue of a government employee's qualified immunity from liability as the threshold issue in a suit against the officer in his personal capacity.

2. In *Gilbert v. Richardson*, we concluded that county law enforcement officers are entitled to qualified immunity for the negligent performance of discretionary acts within the scope of their authority; they may be personally liable if they negligently perform a ministerial act or act with actual malice or an intent to injure.[11] Although we based our ruling in *Gilbert* on the 1991 amendment to the Georgia Constitution,[12] we noted that the protection provided for

---

[8] Id. at 526 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (102 SC 2727, 73 LE2d 396) (1982)).

[9] See *Mitchell v. Forsyth*, 472 U.S. at 526.

[10] See *Williams*, 242 Ga. App. at 808-809. Cf. *Hilson v. Department of Public Safety*, 236 Ga. App. 638 (512 SE2d 910) (1999) (addressing whether state had waived its sovereign immunity before considering liability under OCGA § 40-6-6).

[11] See 264 Ga. at 753.

[12] See id. at 747 (holding that 1991 amendment's extension of sovereign immunity to "the state and its departments and agencies" applies to counties). But see *City of Thomaston v. Bridges*, 264 Ga. 4, 7 (439 SE2d 906) (1994) (holding phrase "state and all of its departments and agencies" in the 1991 amendment does not include municipalities).

negligent discretionary acts was consistent with prior law.[13] "This interpretation comports with the purpose of providing immunity from personal liability to government employees who work in positions where they make policy or exercise discretion."[14] Since that decision, we have applied the same standard of liability for the discretionary acts of city employees as for the acts of county employees.[15] Both our case law and our reasons for developing the doctrine provide authority for applying qualified immunity in the same manner to both municipal police officers and county law enforcement officers.

We have previously held that a law enforcement officer exercises discretion in responding to an emergency call,[16] entrusting a car to a jail inmate,[17] executing a search warrant, and firing a gun at a suspect.[18] Similarly, both officers in these cases were exercising their discretion when they decided to engage in a high speed pursuit against persons suspected of stealing a car.[19] Allegations in the City of Savannah case that the officer ran the stop sign without turning on his blue lights or his siren do not change his decision to engage in a high speed pursuit into a ministerial act, but merely raise a question of fact concerning whether he drove with due regard for the public's safety.[20] There is no evidence that either officer Solomon or deputy Cameron acted with malice or an intent to injure in initiating or continuing the high speed chase of the fleeing suspects.[21] Therefore,

---

[13] See *Gilbert,* 264 Ga. at 753; *Hennessy,* 245 Ga. at 331 (no liability for discretionary acts done within the scope of the public officer's authority and without "wilfulness, malice, or corruption").

[14] *Gilbert,* 264 Ga. at 753.

[15] See *Kidd v. Coates,* 271 Ga. 33 (518 SE2d 124) (1999) (considering whether city police officer performed discretionary acts with "actual intent to cause injury"); see also *Sommerfield v. Blue Cross & Blue Shield of Georgia,* 235 Ga. App. 375, 377 (509 SE2d 100) (1998) (in directing traffic for private employer on a public street, city police officer is performing a police function and may assert official immunity as a defense to a claim of negligence); *Smith v. Little,* 234 Ga. App. 329, 330 (506 SE2d 675) (1998) (applying actual malice standard to allegations that city police officer improperly conducted a traffic investigation). Cf. *Adams v. Hazelwood,* 271 Ga. 414 (520 SE2d 896) (1999) (applying actual malice standard of 1991 amendment to high school football coach).

[16] See *Gilbert,* 264 Ga. at 753 (officer was performing a discretionary function when she rushed to back up another officer in response to an emergency call); *Logue v. Wright,* 260 Ga. 206, 208 (392 SE2d 235) (1990) (officer engages in discretionary act in responding to an emergency call about a fight).

[17] See *Merrow v. Hawkins,* 266 Ga. 390 (467 SE2d 336) (1996).

[18] See *Kidd,* 271 Ga. at 33.

[19] See *Morgan v. Barnes,* 221 Ga. App. 653, 654-655 (472 SE2d 480) (1996) (decision to pursue car that had eluded other officers and was believed to be stolen was discretionary).

[20] See OCGA § 40-6-6 (d) (1); *Poole v. City of Louisville,* 107 Ga. App. 305, 306-307 (130 SE2d 157) (1963).

[21] See *Kidd,* 271 Ga. at 33 (defining "actual intent to cause injury"); *Adams,* 271 Ga. at 415 (rejecting that proof of ill will was sufficient to establish actual malice); *Merrow,* 266 Ga. at 391 (defining "actual malice" as the "deliberate intention to do wrong").

both trial courts properly granted summary judgment to the law enforcement officers based on their official or qualified immunity from personal liability, and the court of appeals correctly affirmed summary judgment in favor of Solomon in the City of Savannah case.

## SOVEREIGN (GOVERNMENTAL) IMMUNITY

3. Besides being sued in their personal capacity, the law enforcement officers were also sued in their official capacity. Suits against "public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity."[22] The doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit.[23] Generally, a court should consider the issue of governmental immunity and its waiver before addressing issues of causation.[24]

The Georgia Constitution provides that the General Assembly may waive the immunity of counties, municipalities, and school districts by statute.[25] OCGA § 36-33-1 states that a municipal corporation shall not waive its immunity by purchasing liability insurance, except as provided in Code Section 33-24-51. OCGA § 33-24-51 gives cities and counties the discretion to purchase liability insurance to cover damages arising from the use of any motor vehicle, providing a limited waiver of their governmental immunity to the amount of the insurance purchased.[26]

In *Gilbert v. Richardson*, we also held that the qualified immunity of a public employee from personal liability does not protect the government employer from liability when the employee is performing his or her job functions.[27] As a result, we concluded that a sheriff may be liable for a deputy sheriff's negligence to the extent of liability insurance coverage.[28] Our rationale was that the government employer should be liable under the doctrine of respondeat superior for the "in-

---

[22] *Gilbert*, 264 Ga. at 750 (quoting *Donaldson v. Department of Transportation*, 262 Ga. 49, 56 (414 SE2d 638) (1992) (Hunt, J., concurring)).

[23] See *Gilbert*, 264 Ga. at 749.

[24] See, e.g., *Logue v. Wright*, 260 Ga. at 208 (considering first whether county waived sovereign immunity by obtaining insurance); *Hilson*, 236 Ga. App. at 639-641 (addressing whether state had waived its sovereign immunity before considering liability under OCGA § 40-6-6).

[25] See Constitution of the State of Georgia of 1983 art. IX, sec. II, para. IX; see also art. I, sec. II, para. IX (sovereign immunity of the state and all its departments and agencies can only be waived by act of General Assembly).

[26] See *Woodard v. Laurens County*, 265 Ga. 404, 405 (456 SE2d 581) (1995); *Gilbert*, 264 Ga. at 751; see also OCGA § 36-33-1 ("A municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51.").

[27] See 264 Ga. at 754.

[28] See id.

evitable mishaps" that will occur when employees perform their discretionary duties without fear of personal liability. Applying the same rationale, we extend this rule of liability to municipalities: municipal corporations may be liable for a city employee's negligence in performing their job to the extent the city has waived its governmental immunity through the purchase of liability insurance.[29]

Because there is no evidence in *Williams v. Solomon* that the City of Savannah maintained liability insurance, there has been no waiver of the city's governmental immunity. Therefore, the court of appeals properly affirmed the trial court's grant of summary judgment based on the city's sovereign or governmental immunity. In contrast, a liability insurance policy had been purchased in Peach County to cover claims arising from the operation of the motor vehicles by the sheriff's department. Therefore, the sheriff's governmental immunity defense is waived to the extent of the liability insurance, and Lang is not precluded from pursuing her claim for damages against sheriff Becham in his official capacity under the doctrine of respondeat superior.

As these cases illustrate, the failure to require cities and counties to maintain liability insurance for the use of motor vehicles on official business has created inconsistent and often unfair results. The ability of a plaintiff to pierce the immunity of a government employer too often depends on the city or county's decision to purchase liability insurance. We are concerned that these anomalous results do not provide the proper incentive to governing bodies to obtain insurance covering the use of their law enforcement vehicles. Due to the danger to the public caused by high speed chases and the choice of many local governments to forego purchasing liability insurance, we urge the legislature to remove the city and county's discretion and require them to procure liability insurance for the operation of their vehicles.[30]

## APPLICABILITY OF OCGA § 40-6-6

4. Having resolved the issues of the defendants' qualified and governmental immunity from liability, the question remains whether OCGA § 40-6-6, which is part of the Uniform Rules of the Road, affects the results in these cases. OCGA § 40-6-6 governs the operation of an authorized emergency vehicle or a law enforcement vehicle

---

[29] See *City of Thomaston*, 264 Ga. at 7 n. 7; *Williams*, 242 Ga. App. at 810.

[30] See, e.g., *Johnson v. Gonzalez*, 223 Ga. App. 646, 647 (478 SE2d 410) (1996) ("The facts in this case are troubling because it is at least the third case to reach the appellate courts in recent years in which a police officer, in responding to a call, has attempted to pass a car on the left, as it attempted to turn left, causing an accident.").

when responding to an emergency call, pursuing a suspected law violator, or responding to a fire alarm. It gives the driver of the vehicle authority to proceed past a red signal or stop sign after slowing down, exceed the maximum speed limits so long as life and property are not endangered, and disregard regulations governing direction when the vehicle uses an audible signal and a flashing or revolving red or blue light.[31] Subsection (d) (1) requires the driver to use due regard for the safety of others while using official vehicles and exercising these emergency privileges. By these provisions, the legislature intended to grant police officers and drivers of emergency vehicles exceptional rights in operating motor vehicles, but also to protect travelers from an officer's or driver's reckless disregard of the public's safety on the highways.[32]

In *Mixon v. City of Warner Robins*,[33] we addressed whether the police officer's decision to pursue a fleeing suspect could be deemed the proximate cause of the plaintiff's injury when the suspect causes the damage. Relying on the statutory language of OCGA § 40-6-6, we noted that it did not provide immunity to the pursuing officer, as a matter of law, solely because the fleeing suspect inflicted the actual injury. Instead, we concluded that the officer could be civilly liable if his decision to pursue the suspect for a minor traffic violation violated his statutory duty under subsection (d) (1) to drive with due regard for the safety of all persons.

In response to *Mixon*, the Georgia General Assembly amended OCGA § 40-6-6 in 1995.[34] Paragraph (d) (2) establishes a reckless disregard standard of proximate cause to replace the negligence standard used in *Mixon*.[35] Specifically, it provides that the law enforcement officer's pursuit shall not be the proximate or contributing cause of any damage, injury, or death caused by the fleeing suspect during the pursuit unless the officer "acted with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit." Paragraph (d) (3) states that the entire subsection deals only with causation and duty.

Because the court of appeals in *Williams* determined that neither the City of Savannah nor officer Solomon had waived govern-

---

[31] See OCGA § 40-6-6 (a) - (c).

[32] See *Poole*, 107 Ga. App. at 305; *Archer v. Johnson*, 90 Ga. App. 418, 424 (83 SE2d 314) (1954).

[33] 264 Ga. 385 (444 SE2d 761) (1994).

[34] See generally Holly M. Hearn, *Peach Sheets — Motor Vehicles and Traffic*, 12 GA. ST. U.L. REV. 295, 296 (1995) (describing legislative efforts of the Georgia Sheriff's Association, Georgia Chief's Association, Georgia Municipal Association, and Association of County Commissioners in response to the *Mixon* decision).

[35] See *Pearson v. City of Atlanta*, 231 Ga. App. 96, 98 (499 SE2d 89) (1998); R. Perry Sentell, Jr., *Local Government Law*, 47 MERCER L. REV. 225, 241, 266 (1995); Hearn, supra note 34, at 298 & n. 25.

mental immunity, we agree that the court was not required to consider whether Solomon violated OCGA § 40-6-6. We affirm the court of appeals' decision in favor of the defendants since they were immune from liability for damages as a matter of law.

Although the court in *Lang* did not expressly address the issue of either qualified or governmental immunity, that omission is not fatal to its analysis. Since the trial court found that the defendants acknowledged that they waived sovereign immunity by purchasing liability insurance, the plaintiff's suit against deputy Cameron and sheriff Becham in their official capacities was not barred by governmental immunity as a matter of law. As a result, the court of appeals properly reviewed the trial court's ruling that the defendants were entitled to summary judgment based on OCGA § 40-6-6 (d) (2). Because the evidence construed most favorably towards Lang shows that a genuine issue of material fact exists concerning whether Cameron acted in reckless disregard for proper law enforcement procedures in his decision to continue the pursuit of the suspect, we affirm the court of appeals' decision reversing the trial court's grant of summary judgment.

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 25, 2001 —
RECONSIDERATION DENIED JULY 26, 2001.

*Case No. S00G1180.*

Harold J. Cronk, for Williams.
Oliver, Maner & Gray, Patrick T. O'Connor, Weiner, Shearouse & Weitz, William W. Shearouse, Jr., Malcolm McKenzie III, for Solomon et al.

*Case No. S00G1287.*

Jones, Cork & Miller, Thomas C. Alexander, for Cameron et al.
Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Brenda A. Raspberry, Assistant Attorney General, Reynolds & McArthur, W. Carl Reynolds, Bradley J. Survant, Robert S. Slocumb, for Lang et al.