ANDREWS, Presiding Judge,
dissenting.
Because there is no factual question requiring that this case be remanded on the official immunity issue, and the record shows that Officer Cooley was entitled, as a matter of law, to official immunity, I respectfully dissent.
Jonathan Bryant, a prison inmate at the Muscogee County Prison, was injured while voluntarily working as part of a crew of inmates cutting grass with a power lawn mower under the supervision of Michael Cooley, a correctional officer employed by the Columbus Consolidated Government (CCG). Bryant sued Officer Cooley to recover damages for his injury, naming Officer Cooley as a defendant in his individual capacity, thus seeking to impose personal liability on Officer Cooley for the injury. Bryant alleged in his amended complaint that his injury was caused by a defective and dangerous lawn mower that he used under Officer Cooley’s supervision, and that Officer Cooley negligently caused the injury by failing to properly inspect the lawn mower, discover the defects, and have the mower repaired to make it safe before it was used. Asserting “official immunity” from this claim, Officer Cooley moved for summary judgment, the trial court ruled that he was not immune and denied the motion, and Officer Cooley appealed pursuant to this Court’s grant of his petition for interlocutory review.
The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to *725 injure. The rationale for this immunity is to preserve the public employee’s independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.
Cameron v. Lang, 274 Ga. 122, 123 (549 SE2d 341) (2001) (citations and punctuation omitted); Gilbert v. Richardson, 264 Ga. 744, 750-753 (452 SE2d 476) (1994). As a correctional officer employed by the CCG, Officer Cooley was protected by the doctrine of official immunity, and may be held personally liable on Bryant’s claim only if: (a) he negligently performed a ministerial act, or (b) he acted with actual malice or an intent to injure. Cameron, 274 Ga. at 125-126; Phillips v. Hanse, 281 Ga. 133, 133 (637 SE2d 11) (2006). Bryant claims that Officer Cooley acted negligently — he does not claim that Officer Cooley acted with actual malice or an intent to injure. Accordingly, Officer Cooley was entitled to official immunity from the asserted claim if he was negligent while performing a discretionary act, even if that negligence amounted to a reckless disregard for Bryant’s safety. Cameron, 274 Ga. at 125-126; Murphy v. Bajjani, 282 Ga. 197, 203-204 (647 SE2d 54) (2007); Williams v. Solomon, 242 Ga. App. 807, 809 (531 SE2d 734) (2000). It follows that the issue presented in Officer Cooley’s motion for summary judgment is whether the negligence alleged involved discretionary or ministerial action.
A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.
Banks v. Happoldt, 271 Ga. App. 146, 149 (608 SE2d 741) (2004) (citations and punctuation omitted). Under this definition, the record shows, as a matter of law, that the alleged negligence involved discretionary action by Officer Cooley.
Officer Cooley was assigned to the CCG’s Parks and Recreation Department, where he supervised a crew of prison inmates (generally four to eight inmates) while they performed yard work on parks and recreation areas. Each morning, Officer Cooley would go to the Muscogee County Prison to pick up inmates who volunteered to serve *726 on his work crew that day. Under Officer Cooley’s supervision, the inmates cut grass and did other yard work using a variety of equipment, which included power lawn mowers, weed eaters, chainsaws, and edgers.
On the day of the injury, Bryant was part of Officer Cooley’s inmate crew and was cutting grass using a three-wheeled power lawn mower. Bryant testified that one of the wheels ran into a depression in the ground, and the mower flipped over on its side with the engine still running and the blades spinning. With his momentum carrying him forward toward the mower, Bryant tried to jump over the mower to clear the blades, but in doing so his leg was cut by the spinning blades. Bryant alleged that the mower had two defective conditions that rendered it dangerous to use and contributed to his injury. First, he claimed that, when he lost control of the mower and it flipped over, the safety or kill switch, which was designed to shut down the engine under those circumstances, was not operational, and the engine continued to run and spin the blades. Second, he claimed that a rubber flap or guard on the side of the mower’s deck, where cut grass was dispelled, was missing. According to Bryant, when he attempted to jump over the mower, his leg was cut by the spinning blades where the rubber flap should have been located. Bryant also gave testimony indicating that Officer Cooley knew the safety or kill switch was not operational, because Officer Cooley told him that, to shut down the engine on the mower, he would need to manually pull the cap off the spark plug.
Officer Cooley testified to the contrary that he had experienced no maintenance problems with the mower at issue; that he inspected the mower the morning before Bryant used it; that the mower had not been altered since it had been in use for about a year prior to the injury; that the mower had a kill switch designed to be released by the operator to shut down the engine; that it was not necessary to disengage the spark plug to shut down the engine; and that the rubber flap on the side of the mower’s deck had not been removed. In addition to supervising the inmates on the crew, Officer Cooley testified about his responsibility for maintenance of the equipment.
Q: Do you have any responsibility regarding maintenance of the equipment?
A: Yes.
Q: What would that be?
A: Well, make sure it’s all operational.
Q: When you say you make sure it’s all operational, do you actually do an inspection?
A: Yes, sir.
*727 Q: As far as the specific lawn mowers, would you do an inspection or what would you do as far as the inspection and maintenance?
A: Inspection. Make sure it’s all operational; make sure there’s oil, gas in it; blades are sharp.
Q: If anything needed to be worked on or repaired on the mower, would you do it?
A: No, sir.
Q: How would you handle the repair?
A: I would take it down to our maintenance shop.
According to Officer Cooley, he inspected the equipment twice daily (before and after work) to “make sure it’s clean, serviceable, [and] ready for the next day’s work.” Additionally, Officer Cooley gave a sworn statement that “[t]here is no written policy or procedure governing the manner in which the mower was to be inspected. . . .” The director of the Parks and Recreation Department testified regarding a question about unwritten repair policy as follows:
Q: Is there a policy if there’s a piece of equipment that needs to be repaired? Is there a policy about how that process is supposed to be carried out to get the repair completed?
A: Normally if it’s a vehicle or equipment, policy is you notify your supervisor that you got a piece of equipment that’s down, you getting ready to take it to Fleet Maintenance or small engines or large engines or whatever the case may be. And you take that piece of equipment down.
Officer Cooley’s counsel conceded at the hearing on the motion for summary judgment that there was evidence in the record that Officer Cooley knew the kill switch on the mower had been disabled. Based on evidence that Officer Cooley knew the kill switch was disabled when he provided the mower for Bryant’s use, Bryant narrowed his opposition to summary judgment, and argued at the hearing that Officer Cooley negligently failed to perform a ministerial duty — to take the mower out of service and have it repaired before giving it to him to cut grass. The trial court agreed, found evidence that Officer Cooley knew the kill switch was disabled, and denied Officer Cooley’s motion for summary judgment on the basis that this alleged negligence was ministerial in nature.
“The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to he made on a case-by-case basis.” Davis v. Effingham County Bd. of Commrs., 328 *728 Ga. App. 579, 584-585 (760 SE2d 9) (2014) (citation and punctuation omitted). The mere fact that taking equipment out of service to have it repaired is a simple and definite act does not make it a ministerial act; to be ministerial, the act “must be done in ‘the execution of a specific duty’McDowell v. Smith, 285 Ga. 592, 593 (678 SE2d 922) (2009).” Roper v. Greenway, 294 Ga. 112, 114 (751 SE2d 351) (2013). Accordingly, “[a] ministerial duty may be established by evidence such as a written policy, an unwritten policy, [or] a supervisor’s specific directive. . . .” Id. at 114-115 (citations omitted). But “[procedures or instructions [in a policy or directive] adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.” Id. at 115 (citation and punctuation omitted). As to Officer Cooley’s duty to have equipment repaired, there was no written policy, and no evidence of an unwritten policy or directive which established a ministerial duty by requiring Officer Cooley “to take specified action in a specified situation.” Id. at 115, n. 2 (citation and punctuation omitted). Rather, the only evidence is the existence of a general policy to get equipment repaired “when you got a piece of equipment that’s down,” or when repairs are needed to make the equipment “operational” or “serviceable and ready.” This evidence established a discretionary repair duty which required Officer Cooley to exercise personal deliberation and judgment to reach reasoned conclusions about when a piece of equipment, which was still capable of being operated to get yard work done, should nevertheless be taken out of service to have a particular mechanical or safety component repaired. Id. at 116. Officer Cooley’s exercise of judgment is inherent in assigning priorities between the duty to get the assigned yard work done with the equipment provided, and the need to maintain the equipment in a reasonably safe working condition. Parrish v. State of Ga., 270 Ga. 878, 879 (514 SE2d 834) (1999) (correctional officer’s actions in supervision of prisoner work detail were discretionary because the officer was “required to exercise judgment in choosing the priority to be assigned to ... diverse responsibilities”). There was no policy, written or unwritten, which directed Officer Cooley to take specified action in a specified situation to handle these responsibilities.
There is no need to remand this case for the jury to resolve whether or not Officer Cooley was aware (or should have been aware) that the mower’s kill switch was disabled, or that the rubber flap on the deck was missing. Even assuming (as the parties and the trial court did) that evidence showed Officer Cooley had this knowledge, the record shows that there was no policy or directive which established that Officer Cooley had a ministerial duty to take the mower *729 out of service and have it repaired. On this record, the issue of whether Officer Cooley was entitled to official immunity was one of law for the trial court. Cameron, 274 Ga. at 124. Although there is evidence to support the conclusion that Officer Cooley’s failure to have safety features on the mower repaired before it was used was negligent, and may have amounted to reckless disregard for Bryant’s safety, there was no basis to find that Officer Cooley’s actions were ministerial and that he forfeited the protection of official immunity. Because, construing the record in Bryant’s favor, there is no issue of material fact, and Officer Cooley was entitled, as a matter of law, to official immunity, the trial court erred by denying Officer Cooley’s motion for summary judgment. Lau’s Corp. v. Haskins, 261 Ga. 491 (405 SE2d 474) (1991).
Decided March 30, 2015
Page, Scrantom, Sprouse, Tucker & Ford, James C. Clark, Jr., for appellant.
Bennett & Casto, Mark A. Casto, for appellee.
I am authorized to state that Judge Boggs joins in this dissent.