[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10093
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00338-MHS


PEYTON OVINGTON,

Plaintiff-Appellant,

versus

ATLANTA INVESTMENT GROUP, INC.,
FURDGE TURNER,
CITY OF ATLANTA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 6, 2016)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Peyton Ovington was arrested and prosecuted for robbing a Subway restaurant located on Ponce de Leon Avenue in Atlanta.  After the State dropped the charges, he sued Furdge Turner, the police officer who swore out the arrest warrant against him.[1]  Ovington alleged that, in applying for the warrant, Turner had lied about or failed to disclose a number of key facts, leading to issuance of an arrest warrant that was not actually supported by probable cause.  The district court granted summary judgment to Turner on all of Ovington's federal and state law claims.  It held that he was shielded from the federal claims by qualified immunity and from the state claims by the Georgia doctrine of official immunity.

Ovington challenges the district court's judgment on just three grounds. First, he argues that the district court improperly adopted Turner's version of certain disputed material facts.  The district court did not abuse its discretion in doing so, however, because Ovington never filed a proper response to Turner's statement of undisputed facts.  Northern District of Georgia Local Rule 56.1(B)(1) requires a movant for summary judgment to include with his motion and brief "a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried.  Each material fact must be numbered separately and supported by a citation to evidence proving such fact." N.D. Ga. R. 56.1(B)(1).  The next paragraph in the rule requires respondents to

---

[1] Ovington also sued Atlanta Investment Group, Inc. and the City of Atlanta.  His claims against those defendants are not before us and so we say no more about them.

2

include with their responsive briefs "[a] response to the movant's statement of undisputed facts." Id. at R. 56.1(B)(2)(a).  The rule clearly explains that the response "shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." Id. at R. 56.1(B)(2)(a)(1).  Ovington never filed a response to Turner's statement of undisputed facts — at least not one that conformed to the local rule's requirements.  He did file a "Statement of Facts as to Which a Genuine Dispute Remains," but that document did not purport to respond to Turner's statement of undisputed facts.  It also did not function as the type of response the rule calls for. Its opening paragraph is argumentative and none of its paragraphs corresponds to Turner's numbered undisputed facts.  Turner noted the problem in his reply brief, but Ovington never sought leave from the district court to fix it.

Ovington's failure to comply with the rule's unambiguous requirements is not an unimportant defect.  Rule 56.1(B) "is designed to help the court identify and organize the issues in the case." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citing Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008)). Noncompliance hampers the court's handling of the case and adds to the court's already substantial workload.  That is why the rule imposes consequences on parties who fail to comply with its terms.  Specifically, it requires a district court to "deem each of the movant's facts as admitted" unless the response:

3

(i) directly refutes the movant's fact with concise responses supported by specific evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in [Local Rule 56.1B(1)].

N.D. Ga. R. 56.1(B)(2)(a)(2). The district court reasonably concluded that Ovington's response failed to do those things. Accordingly, it acted well within its discretion when it deemed admitted the admissible facts set out in Turner's statement of undisputed facts. See Clark v. Housing Auth. of Alma, 971 F.2d 723, 727 (11th Cir. 1992) (noting that district courts get "great deference" in interpreting their local rules).

The next issue before us is whether, in light of the undisputed facts before it, the district court properly granted Turner's motion for summary judgment, based on qualified immunity, on Ovington's federal law claims. Qualified immunity covers a police officer's action in swearing out an arrest warrant so long as the officer had "arguable probable cause" to arrest the subject of the warrant. Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997). Arguable probable cause exists whenever any reasonable officer "in the same circumstances and possessing the same knowledge as the [defendant police officer] could have believed that probable cause existed to arrest [the plaintiff arrestee]." Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990).

4

Turner had arguable probable cause to arrest Ovington.  A tipster informed police that the subject of a photo from the robbery looked like a former employee of the Subway restaurant on Piedmont Road in Atlanta — where Ovington used to work.  An employee at that Subway told Turner that the subject of the photo looked like Ovington, and another employee there agreed that the photo "favored" Ovington.  From those facts, taken together, a reasonable police officer could have believed he had probable cause to arrest Ovington.

Ovington's arguments to the contrary either misrepresent the record or misinterpret the law.  He contends, for example, that Turner repeatedly lied in his warrant application about what the Piedmont Road Subway employees had told him.  But Turner's warrant application did not include any representations about anyone having told him anything.  The application merely described the robbery and stated that "to the best of [Turner's] knowledge and belief, Peyton John Ovington" was the one who had perpetrated it.  Whatever the application's other shortcomings, it did not include lies about what people told Turner.  That fact, among others, distinguishes this case from Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir. 2004), on which Ovington relies.

Ovington also suggests that "[t]he law holds that a person's build is insufficient for identification to establish probable cause for an arrest," but the Ninth Circuit case he cites for that proposition — United States v. Ricardo D., 912

5

F.2d 337 (9th Cir. 1990) — is plainly distinguishable from this one. In Ricardo D., witnesses told sheriff's deputies in Sierra Vista, Arizona to be on the lookout for a Mexican man who was "young," "thin," and "not too tall." Id. at 942. The Ninth Circuit decided that the witnesses' generic descriptions did not support probable cause to arrest the defendant in the case since, "[i]n a location only thirty miles from the Mexican border, it can hardly be said that the presence of a young, Mexican male is highly unusual." Id.

The evidence against Ovington was patently stronger than the evidence in the Ricardo D. case. In this case, three people were separately shown the photo of the robber. Even though the photo did not show his face (he was wearing a mask), it revealed a lot about him beyond just his height and weight. It showed a tattoo on his upper left arm (Ovington has a tattoo there as well); the shoes, hat, and clothing he was wearing; his posture; the width of his shoulders — the sorts of specific details that could help support an identification but that were entirely absent in Ricardo D. Having observed those details, all three people agreed that the subject of the photo looked like Ovington. There is simply no comparison between that kind of evidence and what the deputies relied on in Ricardo D.

Ovington emphasizes that, although three people separately told police that the subject of the photo looked like him, none of them was completely certain about it. Complete certainty, however, is not the standard in qualified immunity

cases like this one.  Arguable probable cause is.  <u>See</u> <u>Kingsland</u>, 382 F.3d at 1232.

And arguable probable cause is a standard lower than probable cause, <u>see</u> <u>Knight v.</u>

<u>Jacobson</u>, 300 F.3d 1272, 1274 (11th Cir. 2002), which itself requires only a

"reasonable probability and not certainty."  <u>Craig v. Singletary</u>, 127 F.3d 1030,

1042 (11th Cir. 1997).  We reject Ovington's arguments to the contrary.

The only remaining issue is whether the district court erred in holding that

Georgia's doctrine of official immunity shielded Turner from Ovington's state law

claims.  Because Turner's actions were discretionary and within the scope of his

official authority, he is entitled to official immunity unless Ovington shows that

Turner acted with actual malice or intent to injure.  <u>See</u> <u>Cameron v. Lang</u>, 549

S.E.2d 341, 345 (Ga. 2001).  Ovington has made no such showing.

**AFFIRMED.**