[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10879

_____

JAMIE CUNNINGHAM,

Plaintiff-Appellant,

*versus*

COBB COUNTY, GEORGIA,
and Cobb County Police Officers,
EVAN MCDONALD,
CHRISTOPHER LAKE,
JOHN GALLOWAY,
in their individual capacities,

Defendants-Appellees,

KARL THOMPSON, et al.,

2                          Opinion of the Court                     24-10879

                                                                    Defendants.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-01349-MLB

———————————————

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

LAGOA, Circuit Judge:

In July 2020, Jamie Cunningham burglarized a car dealership in Cobb County, Georgia, and fled the scene. Cobb County police officers chased after him and used physical force to handcuff and arrest him. Following his arrest, Cunningham filed a lawsuit under 42 U.S.C. § 1983 against certain police officers and Cobb County. Cunningham alleged that the Defendant Officers used excessive force in violation of both the Fourth Amendment and Georgia law. Cunningham also claimed that Cobb County was liable for the officers' alleged constitutional violation under the *Monell*[1] doctrine. After discovery, the Defendant Officers moved for summary judgment, arguing that they were entitled to qualified immunity on Cunningham's Fourth Amendment claim and official immunity on Cunningham's state-law claim. Cobb County also moved for summary judgment, arguing that it was not liable for the Defendant

---

[1] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Officers' conduct because the Officers had not violated Cunningham's constitutional rights, and even if they had, Cobb County did not have a defective custom or policy that caused Cunningham's alleged injuries.

The district court granted summary judgment for the Defendants, which Cunningham now appeals. After carefully considering the record and with the benefit of oral argument, we affirm the entry of summary judgment for the Defendants.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In July 2020, Cunningham burglarized Solo Motors, a car dealership in Cobb County, Georgia. Wearing latex gloves, Cunningham used an object to smash the dealership's glass door. Someone nearby heard the glass shatter and called 911. The caller reported seeing two suspects breaking into the business and described one as wearing black clothing and a white hat.

Around 4:00 a.m., Cobb County police officers—including Officers John Galloway and Evan McDonald—arrived at Solo Motors. By then, Cunningham had jumped over an approximately five-foot privacy fence surrounding Solo Motors and was walking away from the dealership.

When Officers Galloway and McDonald got to Solo Motors, they saw a man who matched the 911-caller's description—later identified to be Cunningham—walking across the street. The Officers activated their patrol car's lights, got out of the car, and told Cunningham to "stop." Despite hearing the Officers' command, Cunningham ran from them into a dark ditch of dense vegetation.

Officer McDonald ran after Cunningham into the ditch. Officer Galloway entered from a different direction. Moments later, Officer Christopher Lake arrived and ran into the ditch from a third direction. Officer Lake yelled "get back here!" and "show me your fucking hands!", but Cunningham continued to run from the Officers.

Officer McDonald caught up to Cunningham first. He grabbed Cunningham by the shoulders and fell face-forward onto the ground, landing on top of Cunningham. While on top of Cunningham, Officer McDonald tried to handcuff him, but Cunningham's hands were under his body. Officer McDonald repeatedly and loudly asked Cunningham to show his hands and put them behind his back, but Cunningham did not comply.

When Cunningham would not show his hands, Officer McDonald used empty-hand closed-fist strikes against him, striking him several times in the head or the side of his body. By this time, Officers Galloway and Lake had reached Cunningham. They joined Officer McDonald in commanding Cunningham to show his hands, to no avail.

According to Cunningham, he could not get his hands behind his back because of the way he was positioned on the ground and because Officer McDonald was striking him. However, Cunningham did not tell Officer McDonald that his hands were stuck. Instead, he kept his hands underneath his body and insisted that he had done nothing wrong. And Officer McDonald saw Cunningham's hands near his waistband and feared he had a weapon.

When Cunningham continued to resist, Officer Lake, who was angled more toward Cunningham's side, hit Cunningham multiple times with both an open hand and closed fist. Officer McDonald was then able to gain control of Cunningham's right arm, despite Cunningham's attempt to pull it away. Cunningham kept his left arm under his body.

Throughout the altercation, the Officers shouted at Cunningham to put his hands behind his back, but he did not comply. Nor did he tell the officers that his arms were stuck underneath him. All he said to the Officers during the struggle was: "I didn't do anything" and "what did I do."

Near the end of the struggle, Officer McDonald struck Cunningham in the upper back using his elbow. The other Officers then pulled Cunningham's left arm from under his body and Officer McDonald handcuffed him.[2] Once in handcuffs, the Officers helped Cunningham to his feet. The gloves Cunningham had worn during the burglary were on the ground where Cunningham had just been lying face down. At no point after handcuffing Cunningham did the Officers hit him.

After the arrest, Cunningham said he was injured and in pain, so the Officers took him to Wellstar Cobb Hospital. There,

---

[2] The parties dispute whether Officer Galloway kicked Cunningham, but when video evidence contradicts the nonmoving party's account of the events, we accept the video evidence. *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022). Here, the video evidence shows that Officer Galloway did not kick Cunningham.

he received x-rays, a CT head scan, and was admitted as a patient. Medical personnel determined he had two or three broken ribs and a punctured lung.

Before being discharged, Cunningham stole a Wellstar Cobb Hospital truck and fled the hospital. Allegedly, he discarded the truck in Bartow County, Georgia, on July 6, 2020, and checked into Erlanger Hospital in Chattanooga, Tennessee. At Erlanger, Cunningham was diagnosed with six fractured ribs. He told medical personnel that his injuries were from a "Motor Vehicle Crash." But because officials were never able to locate the stolen Wellstar truck, no one could confirm whether Cunningham had actually been in a car accident.

On July 14, 2020, deputies from the Bartow County Sheriff's Office arrested Cunningham for the July 6 burglary. Cunningham again evaded arrest by hiding in a wardrobe closet in his sister's basement but was eventually found by a police K-9. Cunningham pled guilty to (1) burglarizing the Solo Motors car dealership; (2) obstructing Officer McDonald; and (3) stealing the Wellstar Hospital truck.

In late July 2020, Cunningham filed a complaint with Cobb County's Public Safety Internal Affairs unit. The Unit opened an investigation into Officer McDonald's and Officer Lake's use of force against Cunningham. But they did not find that either officer had violated Cobb County Police Department's use-of-force policy or the Department of Public Safety's use-of-force code. Both McDonald and Lake were exonerated by command staff.

On April 6, 2022, Cunningham sued five Cobb County police officers, including Officers McDonald, Lake, and Galloway in the United States District Court for the Northern District of Georgia. He alleged that the Defendant Officers used excessive force while arresting him in violation of both the Fourth Amendment of the United States Constitution and Georgia law. He also sued Cobb County, claiming it was liable for the officers' alleged constitutional violation. Nine months later, Cunningham amended his initial complaint, dropping two of the officers from his suit. After discovery, the remaining Defendant Officers—McDonald, Lake, and Galloway—and Cobb County moved for summary judgment. Cunningham opposed their motions.

The district court granted the Defendant Officers' motion for summary judgment. The district court held that the Defendant Officers were entitled to qualified immunity on Cunningham's Section 1983 Fourth Amendment claim because they did not use excessive force during the arrest, and, even if they had, Cunningham failed to point to any clearly established law that the Officers violated. On Cunningham's state-law claim, the district court found that the Officers were entitled to official immunity because Cunningham had failed to put forth record evidence that the Officers acted with actual malice.

The district court also granted summary judgment in favor of Cobb County on Cunningham's *Monell* claim, because (1) the record evidence did not reveal an underlying constitutional violation by Cobb County police; and (2) even if there were an

underlying constitutional violation, the record evidence did not show an affirmative link between any Cobb County or CCPD policy, custom, or practice and the constitutional violation alleged.

## II.    STANDARD OF REVIEW

"We review *de novo* a grant of summary judgment on the basis of qualified immunity, drawing all inferences and viewing all evidence in the light most favorable to the nonmoving party." *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015) (per curiam). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, 'presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party.'" *Caldwell v. Warden*, *FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (quoting *Owusu–Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1307 (11th Cir.), *cert. denied*, 571 U.S. 1045 (2013)). In a case such as this one, where the events at issue were captured on police officers' body-worn cameras, we review that videotape evidence *de novo*. *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021) ("We review *de novo* the videotape evidence that was presented to the district court at the summary judgment stage.").

"We give 'great deference to a district court's interpretation of its local rules' and review a district court's application of local rules for an abuse of discretion." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009) (quoting *Clark v. Housing Auth. of Alma*, 971 F.2d 723, 727 (11th Cir. 1992)). "[T]he challenging party bears the burden of showing that the district court made a clear error of

judgment." *United States v. McLean*, 802 F.3d 1228, 1233 (11th Cir. 2015). We find a district court has abused its discretion when "it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Id.* (internal quotations omitted).

## III.   ANALYSIS

On appeal, Cunningham asserts that the district court erred in granting summary judgment in favor of the Defendant Officers—McDonald, Lake, and Galloway—on both his federal and state-law claims. Cunningham contends that the district court did not give due weight to his Statement of Material Facts, his response to the Defendant Officers' Statement of Material Facts, and other record evidence. Cunningham also argues that—contrary to the district court's holding below—a reasonable jury could find Cobb County liable under Section 1983 for the actions of Officers McDonald, Lake, and Galloway, because the Cobb County Police Department had a custom, policy, or practice that caused the violation of Cunningham's constitutional right.

In our analysis, we first consider the district court's decision to grant summary judgment for the Defendant Officers based on qualified and official immunity. We then address the district court's decision to grant summary judgment for Cobb County on Cunningham's *Monell* claim.

### A.  Summary Judgment for the Defendant Officers

Cunningham asserts that he should be able to proceed to trial on both of his claims against the Defendant Officers, because a reasonable jury could find that the Officers used excessive force while arresting him in violation of the Fourth Amendment and Georgia law. The Defendant Officers respond that the district court's summary judgment ruling should be affirmed because they are entitled to qualified immunity and official immunity. After reviewing the relevant case law and the entire summary judgment record, we hold that the Defendant Officers' actions were objectively reasonable and did not violate the Fourth Amendment or Georgia law. Because Cunningham failed to show that the Defendant Officers violated either the Fourth Amendment or Georgia law, the district court correctly granted summary judgment in the Officers' favor on qualified and official immunity grounds.

1. Cunningham's excessive force claims against the Defendant Officers

We turn first to Cunningham's Fourth Amendment claim. As to this claim, the district court found that the Defendant Officers were entitled to qualified immunity because their use of force was objectively reasonable and did not violate the Constitution. The district court also concluded that even if the Defendant Officers had violated the Fourth Amendment, the Defendant Officers would have still been entitled to qualified immunity because their conduct did not violate clearly established law.

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit

24-10879              Opinion of the Court                    11

in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (per curiam) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotations omitted)). "In order to assert a qualified immunity defense, a government official must show that he was acting within his discretionary authority during the alleged wrongdoing." *Helm v. Rainbow City, Ala.*, 989 F.3d 1265, 1272 (11th Cir. 2021) (internal quotations omitted). Then "the burden shifts to the plaintiff to show (1) that the government official violated a constitutional right and, if so, (2) that the constitutional right was clearly established at the time of the wrongdoing." *Id.* Our inquiry "can begin with either prong." *Marbury*, 936 F.3d at 1233 (affirming district court's order granting summary judgment to defendants without considering whether there was "clearly established [law] at the time of the alleged violation" because inmate failed to show that officials violated a constitutional right).

Here, the Defendant Officers were unquestionably operating within their discretionary authority. *See, e.g., Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016) (explaining that because sheriff's deputy was attempting to arrest or restrain someone, he was clearly engaged in a discretionary capacity). Thus, "we [can] proceed to the next step[ ] of the qualified immunity analysis, i.e., whether the officers in question violated the constitutional rights of [Cunningham]." *Helm*, 989 F.3d at 1272.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest." *Johnson*, 18 F.4th at 1272. "In excessive force cases, whether a plaintiff's constitutional rights were violated is governed by the Fourth Amendment's objective reasonableness standard." *Id.* Under that standard, "[a]n arresting officer's use of force is excessive if a reasonable officer would believe it is unnecessary in relation to the situation at hand." *Helm*, 989 F.3d at 1273. "Because determining reasonableness is an objective test, we do not consider an officer's intent or motivation." *Id.* Instead, we judge the reasonableness of an officer's use of force "*from the perspective of a reasonable officer* on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (emphasis added). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

"Whether an officer has used excessive force depends on the facts and circumstances of each particular case, including a non-exhaustive list of factors, such as (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Johnson*, 18 F.4th at 1272 (cleaned up). "We also consider [(4)] the justification for the application of force, [(5)] the relationship between the justification and the amount of force used, and [(6)] the extent of any injury

inflicted." *Richmond v. Badia*, 47 F.4th 1172, 1182 (11th Cir. 2022). "Not every push or shove violates the Fourth Amendment." *Johnson*, 18 F.4th at 1272 (internal quotations omitted). But "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

The record evidence here, and particularly, the Defendant Officers' body-camera footage,[3] shows that five of the six factors we consider "from the *perspective of a reasonable officer* on the scene—severity of the crime, whether the suspect poses an immediate threat to safety, whether he is actively resisting or attempting to evade arrest, the need for the application of force, and the relationship between the need and amount of force used—weigh against" Cunningham. *Mobley*, 783 F.3d at 1355 (emphasis added). The Defendant Officers reasonably believed that Cunningham committed burglary, a serious crime. Cunningham ran from the Defendant Officers into thick vegetation, when it was pitch black outside, evading arrest. The Defendant Officers had no opportunity to search Cunningham for weapons or handcuff him prior

---

[3] When video evidence is available, we must "view[ ] the facts in the light depicted by the videotape," so long as "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Scott v. Harris*, 550 U.S. 372, 378, 381 (2007). Because neither party contests the authenticity of the Defendant Officers' body-camera footage, we review the video footage along with all other record evidence, assessing the facts as they are depicted in the footage.

to physically engaging with him. When Officer McDonald brought Cunningham to the ground after chasing him, the Defendant Officers demanded repeatedly that Cunningham put his hands behind his back, but he did not comply. Instead, he kept his hands underneath his body and said only that he did nothing wrong—not that his hands were stuck. Officer McDonald eventually fought to gain control of Cunningham's right arm, but Cunningham refused to surrender his left arm, keeping it underneath his body near his waistband. Although force was used to stop Cunningham from fleeing and to gain control of his hands, none was applied once he was handcuffed.

We have previously held that, under similar circumstances, greater uses of force were not unreasonable. *See Mobley*, 783 F.3d at 1355 (striking, kicking, and tasing a resisting and presumably dangerous suspect was not an unreasonable use of force even though the suspect suffered a broken nose, broken teeth, cuts, bruises, and PTSD); *cf. Crenshaw v. Lister*, 556 F.3d 1283, 1291–92 (11th Cir. 2009) (using a police dog to help capture a suspect was not unreasonable even when the dog bit the suspect 31 times after the suspect, fleeing through a wooded area, "laid on the ground and shouted out his location in an attempt to surrender" but before officers handcuffed him). We thus hold that the Defendant Officers' open-fist strikes, closed-fist strikes, and elbow strike to the back, under the circumstances described above, were objectively reasonable uses of force.

Cunningham counters that the district court erred by "disregarding Plaintiff's response to Defendants' Statement of Material Facts, as well as Plaintiff's own Statement of Material Facts, summary judgment brief, and the plethora of evidence in the record from which jurors could find that excessive force was used." But that is not so.

As to Cunningham's assertion that the district court disregarded his response to the Defendants' Statement of Material Facts, Cunningham appears to have misinterpreted the district court's summary judgment order. Even though the district court "admonished" Cunningham for not properly responding to the Defendant's Statement of Material Facts, it also assessed the entire record—including the portions supporting Cunningham's response to the Defendants' Statement of Material Facts. Thus, we reject Cunningham's assertion that the district court disregarded Cunningham's response to the Defendants' Statement of Material Facts. But even if it had, it would not have been an abuse of discretion to do so and therefore not grounds for reversal. *See Mann*, 588 F.3d at 1302–03 (holding that the district court's exclusion of plaintiff's response to defendants' statement of material facts due to noncompliance with local rule 56.1 was not an abuse of discretion by the district court).

Finally, Cunningham provides examples of facts in the record that the district court purportedly downplayed in granting summary judgment for the Defendant Officers. Specifically, he points to (1) his expert witness' testimony that he did not threaten

the Defendant Officers; (2) the fact that there was no report or sighting of a weapon before the Officers' use of force; and (3) his own testimony that he was not resisting arrest, but rather his left arm was stuck. This record evidence does not change our conclusion.

As noted above, when determining whether an officer's use of force is reasonable, we must view the situation from their perspective. *Crenshaw*, 556 F.3d at 1290 (explaining that the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene"); *see Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam) (noting that "judges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation"). That the Defendant Officers had not found a weapon before striking Cunningham does not mean that, from their perspective, they knew he did not have one on him. And simply because Cunningham now claims that he did not give the Officers his left hand because it was stuck does not mean that a reasonable officer at the scene would have viewed his resistance as such. And the body-camera footage shows that he never communicated why he could not comply with the Officers. Instead, the footage, with clear audio, shows that Cunningham resisted the Officers' commands and stated only, "I didn't do anything" and "what did I do." So even if Cunningham failed to comply because his arm was trapped, a reasonable officer in this situation could conclude that (1) Cunningham had a weapon on him and (2) his failure to surrender was an effort to conceal or gain control of that weapon. Because that

conclusion was reasonable, the Defendant Officers' use of force in arresting Cunningham was not excessive, and the record evidence Cunningham points to does not create a dispute on that issue. *See Mobley*, 783 F.3d at 1356 ("[F]orce applied while the suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive.").

Cunningham's expert's testimony does not change the equation.[4] While "we must view the facts in favor of the nonmoving party, we accept video evidence over the nonmoving party's account when the former obviously contradicts the latter." *Richmond*, 47 F.4th at 1179. Cunningham's expert may believe he did not resist or pose a threat to the Defendant Officers, but the body-camera footage shows otherwise. As discussed above, the videos show that Cunningham ran from the officers, would not surrender his hands after clear and continuous requests to do so, and kept his left arm underneath his body where a weapon could have been stored. Because this video evidence clearly contradicts Cunningham's expert's testimony, the district court did not err in "downplaying" the expert testimony and instead finding that the

---

[4] Cunningham does not argue that the district court incorrectly excluded the expert's opinion on Cunningham not posing a threat to the Defendant Officers. Although Cunningham states that the trial court erred by "discrediting the testimony" of his expert witness, he only lodges that argument in the context of the district court's assessment of his *Monell* claim.

Defendant Officers reasonably could have viewed Cunningham as an immediate threat to their safety.

Because the record evidence shows that the Defendant Officers' use of force was objectively reasonable, Cunningham's Fourth Amendment claim fails as a matter of law. We therefore affirm the district court's decision granting summary judgment in favor of the Defendant Officers on Cunningham's Fourth Amendment Claim.

2. Cunningham's state-law claims against the Defendant Officers

Cunningham also argues that the Defendant Officers are not entitled to official immunity on Cunningham's Georgia law claims, because they acted with actual malice during his arrest.

Official "immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption." *Grammens v. Dollar*, 697 S.E.2d 775, 777 (Ga. 2010) (internal quotation marks omitted) (quoting *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001)). "Under Georgia law, a public officer or employee may be personally liable only for [1] ministerial acts negligently performed or [2] acts performed with malice or an intent to injure." *Id.* "Whether the act of a public official is ministerial or discretionary is determined by the facts of each individual case, particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises." *Id.* (citation omitted).

Like federal law, Georgia law makes clear that arrests by police officers are discretionary acts. *Delong v. Domenici*, 610 S.E.2d 695, 698 (Ga. Ct. App. 2005), *abrogated on other grounds by Zilke v. State*, 787 S.E.2d 745 (Ga. Ct. App. 2016). Thus, Cunningham must show that the Defendant Officers acted with malice or an intent to injure to overcome official immunity. *See Merrow v. Hawkins*, 467 S.E.2d 336, 337 (Ga. 1996) (explaining that because a jailer was exercising discretionary power, he was entitled to official immunity unless he acted with "actual malice"). Actual malice can be inferred from an officer's conduct, but unreasonable or "[e]ven recklessly illegal conduct does not support an inference of actual malice." *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016). To show actual malice, an officer must "act with a deliberate intention to do a wrongful act." *Id.* (internal quotations omitted).

For two reasons, we hold that, here, the Defendant Officers are entitled to official immunity because the record evidence does not show that they acted with actual malice or an intent to harm when arresting Cunningham. First, our Fourth Amendment analysis above concluded that the Defendant Officers' actions during the arrest were reasonable. Reasonable conduct, in and of itself, cannot support an inference of actual malice. *See id.* ("Even recklessly illegal conduct does not support an inference of actual malice."). Second, there is no record evidence indicating that the Defendant Officers acted with "deliberate intention to do a wrongful act." *Id.* In fact, the record contains evidence to the contrary. Once the Officers secured Cunningham in handcuffs, there was no further use of force. Also, the Officers immediately helped

Cunningham get medical attention after arresting him. Because Cunningham cannot show that the Defendant Officers acted with actual malice, his state-law claim fails as a matter of law.

### B. Summary Judgment for Cobb County on Cunningham's *Monell* Claim

Lastly, Cunningham contends that the district court erred in granting Cobb County's motion for summary judgment on his *Monell* claim because he provided sufficient evidence for a reasonable jury to find that Cobb County's police department "has a custom and practice" that causes officers to use excessive force. We again disagree.

In *Monell v. Department of Social Services of City of New York*, the Supreme Court held that a local government can be liable under Section 1983 if a plaintiff shows that his constitutional rights have been violated because of a government's policy or custom. 436 U.S. 658, 694–95 (1978). We have explained that "to seek damages" from a local government, a plaintiff must establish "(1) that his constitutional rights were violated; (2) that the municipal office had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Land v. Sheriff of Jackson Cnty.*, 85 F.4th 1121, 1129 (11th Cir. 2023) (cleaned up) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004), *cert. denied sub nom. Land v. Edenfield*, 144 S. Ct. 1349 (2024)).

"A *Monell* claim is derivative of—and so requires—an actual constitutional violation by an officer." *Land*, 85 F.4th at 1129. If a

plaintiff cannot establish an actual constitutional violation by an officer, the plaintiff's *Monell* claim fails at step one. *See id.* ("[Plaintiff's] claim fails at the first step" because the officer "never violated [his] Fourth Amendment right."). Put differently, when a plaintiff fails to establish an underlying constitutional violation, we can dismiss the plaintiff's claims against the local government (or local government entity) as a matter of law. *See id.* (ending the *Monell* analysis at step one because the court found there was no underlying constitutional violation).

In our analysis of Cunningham's excessive force claim against the Defendant Officers, we concluded that the Officers did not violate Cunningham's Fourth Amendment rights. Because we have already ruled that the Defendant Officers did not deprive Cunningham of his constitutional rights, we need not consider whether Cobb County had an official policy that caused a violation. Cunningham's *Monell* claim simply fails as a matter of law. We thus conclude that the district court did not err in granting summary judgment for Cobb County.

## IV.    CONCLUSION

For the reasons stated, we affirm the district court's order granting summary judgment for the Defendant Officers and Cobb County.

**AFFIRMED.**