[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12276

_____

JENNIFER CASE,
MARK LIDDLE,
Pastor,
JIM NELSON,
Pastor,
SCOTT FARR,
BRUCE ERVIN,

                                        Plaintiffs-Appellants,

REBECCA CALLAHAN
et al.,

                                        Plaintiffs,

_versus_

2                    Opinion of the Court                    21-12276

KAY IVEY,
in her individual capacity and official
capacity as Governor of Alabama,
DR. SCOTT HARRIS,
in his individual capacity and official
capacity as State Health Officer,

                                          Defendants-Appellees.

                    ————————————

              Appeal from the United States District Court
                  for the Middle District of Alabama
               D.C. Docket No. 2:20-cv-00777-WKW-JTA

                    ————————————

Before Newsom, Tjoflat, and Hull, Circuit Judges.

PER CURIAM:

       Plaintiffs sued Alabama's Governor and State Health Of-
ficer, seeking damages and injunctive relief because, they claim, Al-
abama's response to the COVID-19 pandemic violated their consti-
tutional rights.  The district court dismissed plaintiffs' injunctive-
relief claims as moot, and it dismissed their damages claims because
defendants are entitled to qualified immunity.  We affirm.

# I

In early 2020, Alabama's Governor, Kay Ivey, and its State Health Officer, Dr. Scott Harris, promulgated a series of orders in response to the COVID-19 pandemic.  Following a state-of-emergency declaration on March 13, 2020, Dr. Harris issued an order that prohibited gatherings of more than 25 individuals if they could not maintain at least six feet of social distance.  About a week later, that order was tightened to gatherings of ten or more.  The order also closed certain close-contact service providers—including barber shops—until May 15, 2020.  In July, Governor Ivey issued a mask mandate requiring all persons to wear a mask if they were within six feet of another individual.  That mandate stayed in place until April 7, 2021.

Plaintiffs are a collection of individuals who were affected by those orders in various ways.  Jennifer Case contends (1) that the orders restricted her religious liberty because they precluded her from attending church for a short period of time and (2) that the mask mandate violated her fundamental right to direct the upbringing of her children.  Mark Liddle and Jim Nelson—who are pastors—assert that the orders violated their religious liberty because they were prohibited from conducting their religious services in a manner consistent with their sincerely held religious beliefs and because they were barred from ministering to the sick and elderly.  Bruce Ervin and Scott Farr—who are co-owners of a barber shop that was forced to close for a period of time—argue that the orders violated their constitutional property and contract rights.

4                    Opinion of the Court                    21-12276

Plaintiffs sued on September 24, 2020, seeking injunctive relief and damages. Defendants filed a motion to dismiss, which the district court granted on the ground that plaintiffs' initial complaint was a shotgun pleading. But the court permitted plaintiffs to refile an amended complaint. Plaintiffs filed their amended complaint, and defendants again moved to dismiss. While the second motion to dismiss was pending, Governor Ivey rescinded the COVID-related orders. Defendants filed a "Suggestion of Mootness," contending that because the orders had been rescinded, "Plaintiffs' claims for injunctive relief are moot and due to be dismissed." Plaintiffs never responded to that filing.

The district court granted defendants' motion to dismiss. It held (1) that plaintiffs' claims for prospective injunctive relief were moot and (2) that defendants were entitled to qualified immunity on plaintiffs' claims for damages because defendants had not violated plaintiffs' constitutional rights, or because, at the very least, those rights were not clearly established. Plaintiffs now appeal, arguing that defendants are not entitled to qualified immunity because (1) they acted outside of their discretionary authority, and (2) even if they didn't, they violated clearly established law.[1] We disagree and affirm the dismissal.

---

[1] Although they briefed the issue, plaintiffs conceded at oral argument that their claims for injunctive relief were rendered moot when the Governor rescinded the orders. *See* Oral Arg. at 1:35–1:40, 2:55–3:10. Accordingly, we focus our discussion only on whether defendants are entitled to qualified immunity.

## II

Whether defendants are entitled to qualified immunity is a two-pronged inquiry.[2]  "The initial inquiry . . . is whether the public official proves that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Grider v. City of Auburn*, 618 F.3d 1240, 1254 n.19 (11th Cir. 2010) (quotation omitted).  If the official meets that initial burden, then "the plaintiff must prove that the official's conduct violated clearly established law."  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).

## A

To determine whether an official is acting within the scope of his discretionary authority, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  In making that determination, "it is critical to define properly the inquiry," *i.e.*, we do not ask "whether it was within the defendant's authority to commit the allegedly illegal act."  *Harbert*, 157 F.3d at 1282.  We instead "ask whether the act complained of, if done for a proper purpose, would

---

[2] "We review *de novo* the grant of a motion to dismiss for failure to state a claim."  *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016).

be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* (quotation omitted).

Plaintiffs contend that defendants were not acting within their discretionary authority because they do not have the "authority to mandate such unprecedented measures as telling churches how they may assemble and worship, mandating universal mask wearing, and picking and choosing which businesses may stay open." But that defines the inquiry far too narrowly. At this stage of the qualified-immunity analysis, we should ask only whether defendants' duties include issuing orders in response to a public-health emergency—we shouldn't analyze the propriety of the specific orders they issued. *Cf. id.* at 1282–83 ("[W]e did not ask whether it was within the defendants' authority to suspend an employee for an improper reason; instead, we asked whether their discretionary duties included the administration of discipline.").

So framed, the challenged orders were—we think plainly—within the scope of defendants' discretionary authority. The Alabama Emergency Management Act grants the governor broad authority to respond to emergencies—including by "mak[ing] . . . the necessary orders, rules and regulations to carry out" the AEMA's provisions, Ala. Code § 31-9-6(1), such as to "secure the safety and protection of the civilian population," *id.* § 31-9-8(a)(5). And the Alabama Code grants the State Health Officer the authority "to adopt and promulgate rules and regulations providing proper methods and details for administering the health and quarantine laws of the state, which rules and regulations shall have the force

and effect of law." *Id.* § 22-2-2(6).[3] To be absolutely clear, the Code does not grant defendants the authority to issue unlawful rules and regulations. But, again, at this step in the qualified-immunity inquiry, the question "is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert*, 157 F.3d at 1282. We ask only whether the orders were "*reasonably related to*[] the outer perimeter of an official's discretionary duties." *Id.* Based on the text of the Code, they were.

## B

Because defendants have shown that they acted within their discretionary authority, "the burden shifts to [plaintiffs] to establish that the defendants' conduct violated clearly established law." *Id.* at 1284. "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1273 (11th Cir. 2021) (quotation omitted). "The usual way of establishing that a constitutional violation was clearly established law is by pointing to a case, in existence at the time, in which the Supreme Court or this Court found a violation based on

---

[3] Plaintiffs concede that the State Health Officer retains this rulemaking authority. They assert, however, that any rule or regulation that they challenge was not tied to a health or quarantine law, because the "State of Alabama does not have a single health or quarantine law that contemplates" the specific orders that Harris issued. But that goes to whether the orders were lawful, not to whether the act of issuing those orders was within Harris's discretionary authority. *See Harbert*, 157 F.3d at 1282–83. And, as already explained, that's not the right question at this stage of the qualified-immunity inquiry.

materially similar facts." *Id.* (quotation omitted).[4]  Plaintiffs have failed to meet their burden.

### i

First, plaintiffs contend that defendants violated their "clearly established rights under the Free Exercise, Establishment, and Assembly Clauses of the First Amendment."  But instead of "pointing to a case" in which we or the Supreme Court "found a violation based on materially similar facts," *id.*, plaintiffs make a handful of generalized assertions about the scope of the First Amendment's protection.  For example, plaintiffs cite Thomas Jefferson's *Letter to the Danbury Baptists* and *Virginia Statute of Religious Liberty*, James Madison's *Memorial and Remonstrance*, the Declaration of Independence, a handful of out-of-circuit cases, and former-President Trump's recent proclamation honoring a twelfth-century martyr.  None of that is sufficient to create a "clearly established" right, though, which (as explained) ordinarily

---

[4] There are, of course, other ways in which a plaintiff might demonstrate that a right is "clearly established" for qualified-immunity purposes, such as when "a broader, clearly established principle should control the novel facts of a particular situation," or when an official's conduct "so obviously violates the constitution that prior case law is unnecessary." *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) (cleaned up).  Because plaintiffs don't specify the theory under which they seek to demonstrate that the government violated their clearly established rights, we assume that they are traveling under "the usual way"—by relying on a case directly on point. *Johnson*, 18 F.4th at 1273.  To be clear, though, even if plaintiffs had invoked either of the less "usual ways," we would reach the same conclusion.

must come from "existing precedent [that has] placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). To be fair, plaintiffs also cite a handful of recent COVID-related decisions of the Supreme Court, but all of them post-date the challenged orders, which disqualifies them as sources of "clearly established" law. *See Coffin v. Brandau*, 642 F.3d 999, 103 (11th Cir. 2011) (en banc) (stating that we must determine "whether the right in question was clearly established *at the time of the violation*" (emphasis added)). Plaintiffs have failed to satisfy their burden that any of the challenged orders violated their clearly established First Amendment rights.[5]

## ii

Next, plaintiffs—citing *Troxel v. Granville*, 530 U.S. 57 (2000)—contend that the mask mandate violated Case's fundamental right to direct the upbringing of her children. But they cite to no case that extends *Troxel* to the specific right they now assert: the right to the "choice both of how to dress their children and what kind of medical care to provide them" in the specific context

---

[5] Plaintiffs also cite *Everson v. Board of Education*, 330 U.S. 1, 15 (1947), for the general proposition that the government can neither "force nor influence a person to go to or to remain away from church against his will" without violating the Establishment Clause. And they cite *Employment Division v. Smith*, 494 U.S. 872, 877 (1990), to support the notion that the state may not prohibit "assembling with others for a worship service" without bumping up against free-exercise rights. But neither of those cases was "based on" facts "materially" (or really even remotely) "similar" to those presented by this case. *Johnson*, 18 F.4th at 1273.

of a mask mandate.  Accordingly, plaintiffs have failed to carry their burden to demonstrate that any parental rights that defendants might have violated were clearly established.

### iii

Plaintiffs also assert that the Fifth and Fourteenth Amendments guarantee "[t]he right to own, buy, sell, and use property," and that Governor Ivey violated those rights when she ordered several businesses to close for a period of time.  But they cite only one case, *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), about which they say only that it "signal[s] an increased recognition of property rights' importance."  That's insufficient to clearly establish the right plaintiffs seek to vindicate in this case.

### iv

Finally, citing *Lochner v. New York*, 198 U.S. 45 (1905), plaintiffs contend that defendants violated a Fourteenth Amendment due-process right to make and enforce contracts because Farr and Ervin were forced to cancel their customers' appointments. Even setting aside the fact that *Lochner* was effectively overruled by the Supreme Court—as plaintiffs acknowledge in their brief—in *West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937), plaintiffs do not cite any case clearly establishing a constitutional right that

defendants violated by promulgating orders resulting in the cancellation of hair appointments.[6]

★  ★  ★

Defendants were acting within their discretionary authority when they issued the challenged orders and plaintiffs failed to meet their burden to establish that the orders violated their clearly established rights. **AFFIRMED.**

---

[6] Plaintiffs also invoke the Constitution's prohibition on passing laws "impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. But they cite no cases applying that provision to similar circumstances and have thus failed to carry their burden to demonstrate that defendants violated a clearly established right. *See Johnson*, 18 F.4th at 1273.