[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11226

Non-Argument Calendar

_____

K'CEE KINARD ODOM,

Plaintiff-Appellant,

*versus*

TOBIAS BOISVERT,
RAY SMITH,
THE CITY OF PHENIX CITY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

D.C. Docket No. 3:19-cv-00832-ECM-JTA

————————————

Before JORDAN, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

K'cee Odom brought this § 1983 suit against Phenix City police officer, Officer Tobias Boisvert, for violating his Fourth Amendment right to be free from excessive force, after Boisvert tased him when responding to a disturbance involving Odom and members of his family. The district court granted summary judgment to Boisvert on qualified immunity grounds after finding that the officer had not acted with unreasonable force. After careful review, we affirm.

I.

The relevant facts -- as gleaned from the record on summary judgment -- are these. On September 12, 2019, a dispute broke out at a restaurant owned and operated by Odom, between Odom and his aunts, Rhonda Kennedy and Cathy Benton. Odom asked the two women to leave, and they went outside. Both Odom and Kennedy called 911 to report the incident, and two Phenix City police officers, Tobias Boisvert and Darrell Johnson, were dispatched to the restaurant to respond to the incident. Outside the restaurant, Officer Johnson turned on his body worn camera ("BWC"). The officers spoke with Kennedy, who said that Odom had punched her and had been getting aggressive with Benton. She asked the officers to go inside to check on Odom because he was "on a rampage."

The two officers entered the restaurant, accompanied by Odom's two aunts. The restaurant was completely dark, so Officer Johnson turned on a flashlight. As described in the complaint, "Mr. Odom was walking toward Officer Johnson and Cathy Benton and away from [Officer] Boisvert," when Boisvert, "without provocation, cause or warning, shot Mr. Odom in the back with his Taser." Johnson's BWC tells a different story, however. Immediately after Johnson turned on the flashlight, Odom yelled "get the fuck outta here" and people started screaming. The BWC shows another man, now known to be Odom's brother, trying to restrain Odom, but Odom struggled and broke free from his brother's grasp and ran toward a group of people a few paces away from him. Seconds later, before he could reach the group, Boisvert tased him. The taser prongs hit Odom in the back and he fell to the floor. The usage report shows that the taser delivered a single five-second burst of current to Odom.

Officers handcuffed Odom and brought him outside. Odom can be seen on the BWC footage standing outside, pacing around, arguing with the officers. At some point, Odom began to complain of back pain and requested to be taken to the hospital. In a later written declaration, Odom said that he "was in very bad pain" and that it took approximately 90 minutes for emergency medical personnel ("EMS") to arrive and remove the taser prongs. After being treated by EMS, Odom was transported to the hospital, accompanied by Officer Johnson. At the hospital, he refused treatment because he believed that he should not have to pay the bill. Johnson then arrested Odom and transported him to the jail.

Odom sued Boisvert; Ray Smith, the Chief of Police at the Phenix City Police Department; and the City of Phenix City in the United States District Court for the Middle District of Alabama. Odom brought several state and federal claims against Boisvert and the other defendants, including a claim brought pursuant to 42 U.S.C. § 1983 that Officer Boisvert had violated Odom's Fourth Amendment right to be free from excessive force. The defendants moved for summary judgment, and, relevant here, Boisvert sought qualified immunity from the lawsuit.

In ruling on whether Officer Boisvert was entitled to qualified immunity on the excessive force claim, the district court noted that the incident had begun for Officer Boisvert when he entered a dark restaurant moments after being told by Odom's aunt, Kennedy, that Odom had physically assaulted her and had been acting aggressively toward his other aunt, Benton. Thus, the court explained, "a reasonable officer in Boisvert's position would have perceived immediate danger to" Benton when Odom broke free of his brother's grasp and rushed toward her, barreling through tables and chairs to reach her. The court added that this situation was not one in which our Court has found the use of a taser to be unreasonable, like when a suspect is "non-hostile and non-violent." And, the court pointed out, Odom had not provided any evidence of any injuries, other than his declaration that he "was in very bad pain." On this record, the court concluded that a single use of a taser in this "rapidly evolving situation where Odom aggressively charged a third party" was not excessive use of force. The district court granted summary judgment to Boisvert on qualified immunity

grounds, and then disposed of the remaining claims against the defendants.

Odom timely appealed, but only as to the excessive force claim against Officer Boisvert.

## II.

We review *de novo* a district court's grant of summary judgment based on qualified immunity. *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1271 (11th Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary-judgment stage, we view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in their favor, *Johnson*, 18 F.4th at 1271–72, except where video evidence "obviously contradicts [the nonmovant's] version of the facts," in which case "we accept the video's depiction instead of [the nonmovant's] account," *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)).

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). In seeking qualified immunity, the defendant-officer first must prove that he was "acting within his discretionary authority." *Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019) (quoting *Skop v. City of*

6                    Opinion of the Court                    23-11226

*Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007)).  If he makes this showing, the burden shifts to the plaintiff to prove that "(1) the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." *Id*.  "We may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either." *Id*.

## A.

"[T]o pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004) (emphasis omitted).  In other words, we ask "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quotations omitted).

In the district court, Officer Boisvert demonstrated that he had acted well within his discretionary authority throughout the time he was at Odom's restaurant responding to the 911 call.  And Odom never disputed that Boisvert had been performing a discretionary function; rather, as the district court noted, Odom "disregard[ed] this step of the analysis altogether."  On appeal, Odom says that he did dispute that Boisvert was performing a discretionary function in his Memorandum in Opposition to Summary Judgment, when he argued that Boisvert was not "protect[ing] innocent

civilians," as the Motion for Summary Judgment had claimed. But this has nothing to do with whether Boisvert was performing a discretionary function: for this analysis, we look at the officer's actions *regardless of any alleged improper purpose*. *See id*. Odom thus has waived any argument that Boisvert was not performing a discretionary function. *Hunter v. Leeds*, 941 F.3d 1265, 1278 n.16 (11th Cir. 2019) (refusing to consider a plaintiff's argument that the defendant-officer was not performing a discretionary function on appeal when the plaintiff did not contest the point in district court).

In any event, even if Odom had raised the issue, it would have been futile: our case law and common sense tell us that responding to a 911 call, apprehending a suspect, and making an arrest, as Boisvert did, are at the heart of a police officer's duties. *See id*. ("The pursuit and apprehension of suspected criminals is a core discretionary function of the police."); *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (finding that "making an arrest is within the official responsibilities of [an officer]," and so the defendant-officer "was performing a discretionary function when he arrested [the plaintiff]").

### B.

The burden therefore shifts to Odom to show that Officer Boisvert violated his constitutional right and that this right was clearly established at the time of the alleged violation. As we'll explain, Odom has not shown that Boisvert violated any of his constitutional rights, so we need not consider the clearly established prong of the analysis.

Odom's claim is straightforward -- he says that Officer Boisvert violated his Fourth Amendment right to be free from excessive force when Boisvert tased him in the back. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). Making an arrest necessarily involves "some degree of physical coercion or threat thereof"; the Fourth Amendment simply requires that the force used to effect an arrest be reasonable. *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010) (quoting *Lee*, 284 F.3d at 1197). Determining "whether the force is reasonable depends on 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* at 737–38 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)).

Reasonableness is an objective test: "the question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. We assess reasonableness "from the perspective of a reasonable officer on the scene," bearing in mind that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

23-11226                Opinion of the Court                9

Further, the reasonableness of a use of force "depends on the 'facts and circumstances of each particular case.'" *Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021) (quoting *Graham*, 490 U.S. at 396). These include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether he is actively resisting arrest or attempting to evade arrest by flight; (4) the need for application of force; (5) the relationship between the need and amount of force used; and (6) the extent of the injury inflicted by the arresting officer. *Id.*

In this case, there is no genuine dispute of material fact about whether Boisvert's single use of the taser was reasonable. Indeed, based on all the circumstances surrounding the incident at Odom's restaurant, Boisvert reasonably feared that Odom posed an immediate threat to third parties and applied a relatively small amount of force (which led to no lasting injury) in order to prevent any violence from occurring.

As the undisputed record reflects, Officer Boisvert arrived on the scene after being dispatched in response to a 911 call. Upon his arrival, the caller, Kennedy, told him that Odom had punched her and that he was "on a rampage." When the officers entered the restaurant, Odom yelled "get the fuck outta here," and Boisvert saw Odom break free from another man's grasp and start running, pushing furniture out of his way as he went, toward a group of people that included Benton. The situation was chaotic: the restaurant was dark, people were screaming, and Odom was yelling

and running toward a group of people, including someone he had allegedly been aggressive toward earlier. A reasonable officer could have believed that Odom was a threat to those people, especially given the aggressive nature of his yelling and the fact that he had wrenched himself free of his brother's restraint to run toward them. Boisvert fired his taser once, seconds after the chaos began. Though Odom was in pain from the taser prongs, he has not claimed lasting injury and did not receive any hospital treatment.

The reasonableness of Officer Boisvert's conduct in these circumstances is well supported by our case law. In *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), for example, we upheld the grant of qualified immunity to an officer on an excessive force claim where the officer had fired a taser during a traffic stop. Before the officer deployed the taser, the suspect had refused to comply with commands, "used profanity, moved around and paced in agitation, and repeatedly yelled at [the officer]." *Id.* at 1278. We explained that the officer's single "use of the taser gun to effectuate the arrest of [the suspect] was reasonably proportionate to the difficult, tense and uncertain situation that [the officer] faced," especially since it "may well have prevented a physical struggle and serious harm to either [the suspect] or [the officer]." *Id.*

Here, Odom was acting more combatively than the suspect in *Draper* -- who was being merely "hostile, belligerent, and uncooperative," *id.* -- by yelling and running toward someone with whom he had just had a dispute, despite someone else trying to hold him back. Officer Boisvert thus faced a far more volatile

situation, and a threat far more immediate, than any threat faced by the officer in *Draper*. Yet the amount of force used was the same: the single use of a taser, causing no serious injury. Under the circumstances, there can be no dispute that Boisvert's reaction was reasonable.

Odom argues to us that the district court failed to view the evidence in the light most favorable to him when analyzing the factors. In particular, Odom says that the court's finding that he did not suffer serious harm is contrary to the record, which shows that he was hospitalized after being tased. But the undisputed record reflects that Odom was taken to hospital at his request, not that he was "hospitalized" -- in fact, according to the evidence, he refused treatment at the hospital. The record shows, at most, that Odom suffered "very bad pain" from being tased. And as we said in *Draper*, "[a]lthough being struck by a taser gun is an unpleasant experience," an officer's single use of a taser "causing a one-time shocking" that "may well have prevented a physical struggle and serious harm" to someone at the scene is "reasonably proportionate to the need for force and did not inflict any serious injury." *Id.*

Odom also argues that the evidence taken in the light most favorable to him does not support the district court's finding that he presented a threat to a third party. But his interpretation of the record is not supported by the applicable case law. While the summary judgment standard requires that the evidence be taken in the light most favorable to him, we will not do so where his characterization of the events is squarely contradicted by the video evidence.

*See Shaw*, 884 F.3d at 1098. Here, the BWC footage unambiguously shows Kennedy telling the officers that Odom punched her, and unambiguously shows Odom struggling and breaking free from a man's grasp and rushing toward a group of people, pushing furniture out of the way to get there. It also reveals that Odom distinctly yelled "get the fuck outta here" when the officers and his aunts walked in -- an outburst he has not denied. Under our case law, the district court properly considered that footage when deciding the motion for summary judgment, and, moreover, after considering the circumstances as a whole, properly determined that a reasonable officer could have believed that Odom presented a threat to a third party at the time Officer Boisvert deployed the taser on him.

In short, Odom has not shown that Boisvert violated his constitutional right to be free from excessive force when the officer discharged his taser a single time to prevent what he reasonably perceived to be a volatile situation from turning violent. Accordingly, the district court did not err in granting Boisvert's motion for summary judgment on qualified immunity grounds, and we affirm.

**AFFIRMED.**